UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JOEL ZWEIG,<br><br>    Defendant. | Case No. 16-cr-00208-WHO-1<br><br>**ORDER RE: PRETRIAL MOTIONS**<br><br>Re: Dkt. Nos. 52, 53, 54, 56, 58 |

**INTRODUCTION**

Defendant Joel Zweig has been charged with wire fraud, obstruction of justice, perjury, aggravated identity theft, and making false statements to a government agency. Zweig moves for disclosure of *Brady* material, disclosure of 404(b) evidence, dismissal of Counts One, Two, Four, and Twelve of the Indictment, and a bill of particulars. The government moves *in limine* to preclude Zweig from introducing certain arguments and evidence at trial. I heard argument at the pretrial conference on August 29, 2017. For the reasons stated, I DENY each of Zweig's motions except, because he augmented his motion for a bill of particulars regarding paragraph 18(b) of the Indictment in a motion filed today [Dkt. No. 80-1], I will hold off ruling on that issue until the government has an opportunity to respond. I GRANT IN PART and DENY IN PART the government's motions *in limine* without prejudice to its ability to raise the denied motions at trial with respect to specific evidence.

**BACKGROUND**

**I.    Undisputed Facts**

Defendant Joel Zweig is a New York attorney. Indictment ¶ 1 [Dkt. No. 1]. On January 9, 2006, Zweig represented EB in a transaction to purchase a company, Better Living LLC. *Id.* ¶ 6.

Better Living LLC was a tenant of a property at 103 Second Avenue, Manhattan, New York, since January 27, 2005. *Id.* The landlord of that property was Due Milla Realty LLC Group ("Due Milla").

Pet Food Express, Ltd. ("PFE") was a company that operated a chain of pet specialty retail stores primarily in the San Francisco Bay Area, owned by two individuals, MW and ML. Indictment ¶ 3. On February 6, 2004, PFE entered into a contract with Royal Canin USA, Inc. ("RC") to distribute its pet food products. *Id.* ¶ 7. The contract provided that PFE would receive 5% of all of RC's sales in specific retail territories controlled by PFE, defined as any county in which PFE opened an outlet of at least 2,000 square feet and intended to be a permanent location. *Id.* ¶¶ 7–8.

On April 5, 2009, PFE brought suit against RC for breach of the 5% compensation provision in the U.S. District Court for the Northern District of California. Indictment ¶ 9. During the discovery process, on November 11, 2010, MW testified that PFE had planned to expand in Manhattan, but did not state that PFE had a lease arrangement in process for a Manhattan store, nor did PFE produce any documents to RC reflecting that PFE had any commitment in place to expand to Manhattan. *Id.* ¶¶ 10–11. PFE's December 1, 2010 expert damages report, however, claimed $1.6 million in damages directly attributable to a planned PFE retail store in Manhattan. *Id.* ¶ 12.

On July 26, 2011, approximately one month before the trial date of August 29, 2011, PFE emailed to RC a lease purportedly signed by "Anthony Guida" on behalf of Due Milla and EB on behalf of Better Living LLC, dated January 14, 2008 (the "2008 lease"), for retail space at 103 Second Avenue in Manhattan, New York, notarized by MM. Indictment ¶¶ 13, 15. The lease included an assignment dated July 25, 2011, assigning the 2008 lease to PFE and purportedly signed by EB on behalf of Better Living LLC and MW on behalf of PFE. *Id.* ¶ 13.

On August 8, 2011, RC filed a "Notice of Potential Fraud on the Court," advising the district court that the 2008 lease and assignment appeared to be fraudulent documents. Indictment ¶ 16. In response, on August 26, 2011, counsel for PFE, JDM, delivered to the district court an "Affidavit of EB" and a declaration of Zweig, filed under penalty of perjury. *Id.* ¶ 17. These

documents were also electronically transmitted to RC on the same date. *Id.* In his declaration, Zweig stated that he received the 2008 lease from EB and forwarded it to PFE without reviewing it. *Id.* He denied any intent to deceive as well as knowledge that it was fraudulent. *Id.*

## II. Indictment and Charges

On May 17, 2016, Zweig was indicted on four counts of wire fraud in violation of 18 U.S.C. § 1343, two counts of obstruction of justice in violation of 18 U.S.C. § 1503, four counts of perjury in violation of 18 U.S.C. § 1623(a), one count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), and one count of making false statements to a government agency in violation of 18 U.S.C. § 1001(a)(2). *See* Indictment. The government alleges that beginning no later than November 8, 2010 and continuing until at least August 23, 2013, Zweig devised a scheme to defraud through the knowing and intentional transmission of the 2008 lease to PFE, creation of the "Affidavit of EB" including forgery of EB's signature, and submission of a declaration containing false statements. *Id.* ¶ 18. The purpose of this scheme was to mislead the district court about the origins of the 2008 lease in order to enable PFE to continue the lawsuit to recover money damages from RC USA and to prevent the court from learning about Zweig's role in preparing the 2008 lease. *Id.*

In Counts One through Four for wire fraud, the government contends that Zweig transmitted or caused to be transmitted by means of wire in interstate commerce the following four communications:

1. On July 26, 2011, the ECF filed Joint Exhibit List including the false 2008 lease filed by RC's counsel with the district court in the Northern District of California
2. On July 26, 2011, an email including the 2008 lease and assignment from PFE's law firm in Oakland, CA to RC in Florida
3. On August 26, 2011, an email from Zweig in New York to JDM in Oakland, CA attaching the Affidavit of EB and Zweig's Declaration
4. On August 26, 2011, an email from PFE's law firm in Oakland to RC's counsel in Florida attaching the Affidavit of EB and Zweig's Declaration

Indictment ¶ 20. In Counts Five and Six for obstruction of justice, the government charges Zweig

3

1 with obstructing justice through the creation of the 2008 lease and the false declaration concerning the lease, as well as the Affidavit of EB and forged signature of EB. *Id.* ¶¶ 21–24. In Counts Seven through Ten, the government charges Zweig with perjury relating to four false statements in paragraphs 13, 14, 15, and 17 of his declaration. *Id.* ¶¶ 25–32. In Count Eleven, the government charges Zweig with aggravated identity theft in relation to his use of MM's identity and notarial certification, during and in relation to felony violations of 18 U.S.C. § 1343. *Id.* ¶ 22–34. Finally, in Count Twelve, the government charges Zweig with making false statements to a government agency when he falsely stated that he was unfamiliar with the details of the PFE lawsuit and had no understanding of how the 2008 lease could have been used to calculate damages in the lawsuit. *Id.* ¶¶ 35–36.

## DISCUSSION

### I. Motion for *Brady* Material

In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). The Supreme Court has since made clear that the duty to disclose such evidence applies even when there has been no request by the accused, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, *United States v. Bagley*, 473 U.S. 667, 676 (1985).

Zweig moves for an order directing the pre-trial disclosure of *Brady* material. More specifically, Zweig requests all exculpatory and impeachment material, including the name and address of any witness to the offenses that has made a written or oral statement whom the government does not intend to call as a witness in this case. Mot. at 8. In response, the government contends that no such order is necessary, as it understands its obligations under *Brady* and has provided the defense with proffer agreements pertaining to its three potential trial witnesses. Opp. at 4. The government also contends that Zweig's request is overbroad insofar as it requests names of witnesses to the offenses that have made a written or oral statement whom the government does not intend to call as a witness in this case. *Id.* at 5.

4

I understand the government's opposition to state that it has already turned over to the defense any material that could qualify as *Brady* material, and thus Zweig's motion is moot. I accept the government's representation. Of course, the name and address of any witness to the offenses who has made any written or oral statements whom the government does not intend to call as a witness in this case are potentially within the government's obligations under *Brady*. Such witnesses may very well have made statements containing facts or observations about the offenses that could prove to be exculpatory to Zweig, and if the government is aware of any such witnesses, it would be required to disclose their names and addresses to the defense. Moreover, the government's *Brady* obligations are continuing. But unless Zweig has reason to believe that the government is withholding specific evidence and can explain those reasons as well as the evidence sought, a further order concerning *Brady* obligations is not necessary at this time.

**II.     Motion for 404(b) Evidence**

Federal Rule of Evidence 404(b) prohibits the admission of evidence of "a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). It permits the use of such evidence, however, for "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Under Rule 607, "[a]ny party . . . may attack the witness's credibility." Fed. R. Evid. 607. And under to Rules 608 and 609, on cross-examination, a party may admit only certain criminal convictions or extrinsic evidence to prove specific instances of a witness's conduct if they are probative of the character for untruthfulness or untruthfulness of the witness or another witness whose character the witness being cross-examined has testified about.

Zweig moves for disclosure of 404(b) evidence that the government may use to cross-examine the defendant should he testify at trial. The government responds that it has already disclosed 404(b) evidence supporting its case-in-chief to the defense, and does not intend to offer any other 404(b) evidence in cross-examination to prove defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. It argues, however, that it may introduce evidence of prior acts that are probative of Zweig's character for untruthfulness or

5

untruthfulness pursuant to Rule 608(b), and that it is not required to disclose its potential impeachment evidence.

The government is correct that it has no obligation to disclose Rule 608(b) evidence prior to trial. *See United States v. Hartmann*, 958 F.2d 774, 768 n.5 (7th Cir. 1992) (citing Fed. R. Crim. P. 16). Any 608(b) evidence that could *also* constitute "other act" evidence within the meaning of Rule 404(b), or is subject to disclosure under Federal Rule of Criminal Procedure 16, however, must be disclosed. *See, e.g.*, *United States v. Lim*, No. 99 CR 689, 2000 WL 782964, at *2 (N.D. Ill. June 15 2000); *United States v. Maitra*, No. 2:13-CR-86, 2013 WL 6388661, at *3 (N.D. Ind. Dec. 6, 2013). In that light, I DENY Zweig's motion for 404(b) evidence.

### III. Motion to Dismiss Counts One, Two, Four, and Twelve

Article III (Section 2, clause 3) and the Sixth Amendment of the United States Constitution, as well as Federal Rule of Criminal Procedure 18, guarantee that a criminal defendant be tried in the district where the crime was committed. *United States v. Evans*, 62 F.3d 1233, 1236 (9th Cir. 1995); *United States v. Corona*, 34 F.3d 876, 878–79 (9th Cir. 1994). The government bears the burden of proving venue by a preponderance of the evidence." *United States v. Angotti*, 105 F.3d 539, 540 (9th Cir. 1997).

In order to determine whether venue is proper, I must "identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002). While crimes consisting of a single, noncontinuing act are "committed" in the district where the act is performed, "[c]rimes that are not unitary but instead span space and time . . . may be considered continuing offenses under 18 U.S.C. § 3237(a)." *Corona*, 34 F.3d at 879. "Continuing offenses may be prosecuted 'in any district in which such offense was begun, continued, or completed.'" *Id.* (citing 18 U.S.C. § 3237(a)). Both wire fraud, with which Zweig is charged in Counts One, Two, and Four, as well as making false statements under Section 1001, with which Zweig is charged in Count Twelve, are "continuing offenses," and thus venue lies "in all of the places where any part was accomplished." *Pace*, 314 F.3d at 350; *United States v. Rosen*, 365 F. Supp. 2d 1126, 1132 (C.D. Cal. 2005).

**A. Counts One, Two, and Four for Wire Fraud**

Zweig moves to dismiss Counts One, Two, and Four, arguing that because he was not the individual who used a wire facility in connection with those counts but merely set those transmissions in motion from New York, venue may not lie in this district. The government contends that it is not defendant's location, but rather the location of the wire transmission that determines venue. *See United States v. Grenoble*, 413 F.3d 569, 573 (6th Cir. 2005). Because the Indictment alleges that the wire was transmitted or was caused to be transmitted from, through, or into the Northern District of California, venue is proper here.

The government is correct. While Zweig may not have entered California or used any wire facilities in California himself, the indictment clearly alleges that he knowingly caused to be transmitted certain fraudulent materials that originated from, passed through, or were received in the Northern District of California. With respect to Counts One and Two, Zweig's creation and transmission of the phony lease, with the knowledge of PFE's intent to use the lease in connection with its lawsuit and in support of its claims for monetary damages, is sufficient to establish that Zweig caused to be transmitted the Joint Exhibit List containing the phony 2008 lease to the court in the Northern District of California, as well as from PFE's law firm in the Northern District of California to RC's. *See* Indictment ¶¶ 18, 18(d). With respect to Count Four, the government alleges that Zweig himself drafted the false Affidavit of EB and Zweig Declarations knowing that PFE's attorney would submit these documents to the court in relation to the lawsuit as well. *See id.* ¶¶ 18(g)–(i). Because Zweig created these documents for the purpose of their transmission, Zweig has similarly caused to be transmitted those documents from the Northern District of California.

As venue is proper in this district, I DENY Zweig's motion to dismiss Counts One, Two, and Four of the Indictment.

**B. Count Twelve for False Statements Under Section 1001**

Zweig also moves to dismiss Count Twelve, arguing that the allegedly false statements at issue were made while he was being interviewed by law enforcement in the Southern District of New York. The government contends that even if Zweig made the false statements in New York,

venue is still proper in the Northern District of California because this is where the statements were felt and therefore became material. *See United States v. Salinas*, 373 F.3d 161, 167 (1st Cir. 2004).

The government is correct. Because materiality is an element of the offense under Section 1001, and a defendant cannot be convicted under Section 1001 without a showing of such materiality, *see Salinas* 373 F.3d at 167, venue may lie where the effect of the statement is felt and it is therefore rendered material. *See United States v. Ringer*, 300 F.3d 788, 791–92 (7th Cir. 2002). This is consistent with the Ninth Circuit's holding that venue for the prosecution of the crime of false statements in violation of 18 U.S.C. § 1014 lies where the crime is completed by the statement having effect. *Angotti,* 105 F.3d at 542 ("We conclude that venue was therefore proper in the Central District, where the communication reached the audience whom it was intended to influence, even though some of the criminal conduct occurred in the Northern District, where the statements were submitted."). Because Zweig's false statements were material only in the context of the lawsuit in the Northern District of California, venue is proper in this district. For these reasons, I DENY Zweig's motion to dismiss Count Twelve of the Indictment.

### IV. Motion for a Bill of Particulars

Rule 7(f) of the Federal Rules of Criminal Procedure provides that "[t]he court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). "A motion for a bill of particulars is appropriate where a defendant requires clarification in order to prepare a defense. It is designed to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir.1983) (citations omitted). The purposes of a bill of particulars are served "if the indictment itself provides sufficient details of the charges and if the Government provides full discovery to the defense." *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984). The Ninth Circuit has stated that "obtain[ing] the names of any unknown conspirators" "do[es] not warrant a bill of particulars." *United States v. DiCesare*, 765 F.2d 890, 897 (9th Cir. 1985); *see also United States v. Ellis*, 121 F. Supp. 3d 927, 940 (N.D. Cal. 2015) (denying a motion for a bill of particulars requesting the names of alleged members of a conspiracy).

In deciding whether to order a bill of particulars, "a court should consider whether the defendant has been adequately advised of the charges through the indictment and all other disclosures made by the government." *Long*, 706 F.2d at 1054. "A defendant is not entitled to know all of the Evidence the government intends to produce, but only the Theory of the government's case." *United States v. Giese*, 597 F.2d 1170, 1181 (9th Cir. 1979). The district court has "very broad discretion" in deciding whether a bill of particulars is warranted. *Will v. United States*, 389 U.S. 90, 99 (1967).

### A. Identification of Co-Conspirators or Co-Schemers

Zweig seeks the identities of individuals whose conduct he will be held responsible for and who the government may allege was the principal in committing the charged conduct. The government contends that the Indictment is sufficient to inform Zweig of the charges against him, and that Zweig is not permitted to restrict the government's theories of liability at trial using a bill of particulars by requiring the government to set forth an aiding and abetting theory of liability.[1]

Zweig urges me to follow the decision in *United States v. Vargas*, where the defendant was charged with multiple counts relating to conspiracy to possess controlled substances with intent to distribute. No. 15-cr-00530-BLF-2, 2016 WL 1446773, at *1 (N.D. Cal. Apr. 13, 2016). While the court stated that the defendant was "not entitled to identification of unknown co-conspirators," *id.* at *3, it agreed that the defendant was "entitled to know whether the Government is proceeding on an aiding and abetting theory" with respect to certain counts. *Id.* at *4. The opinion noted that such information was "necessary to permit [the defendant] to prepare a defense," because "[a]iding and abetting is not a separate and distinct offense from the underlying substantive crime, but is a *different theory* of liability for the same offense." *Id.* (emphasis in original); *but see Ellis*, 121 F. Supp. 3d at 941 (denying motion for bill of particulars to specify which defendants are principals and who are aiders and abettors because "[t]he indictment may charge a defendant with being both a principal and an aider and abettor").

---

[1] The government also argues that Zweig's motion is procedurally defective because it was filed more than 14 days after Zweig's arraignment and without leave of court. Opp. at 4 (citing Fed. R. Crim. Proc. 7(f)). While I recognize that Zweig has moved for a bill of particulars later than usual, I will address his motion on the merits.

9

Unlike the defendant in *Vargas*, however, Zweig does not face conspiracy charges. Knowing whether the government proceeds on the theory "that the defendant exercised dominion and control . . . , or that she aided and abetted another" is not necessary to permit Zweig to prepare a defense. *Id.* at *2. Because these theories are not elements that the government must prove with respect to the charges brought against Zweig, the government is not obligated to provide such information to the defendant.

Zweig also points to *Untied States v. Feil*, in which Judge White found that the defendants in that case were entitled to a bill of particulars detailing "whether the Government views the conspiracy alleged in the indictment to be one encompassing conspiracy or several separate and distinct conspiracies" as well as "the manner in which [they] and each alleged co-conspirator, whether or not named in the indictment, contributed to the charged conspiracy or conspiracies." No. CR 09-00863 JSW, 2010 WL 1525263, at *3 (N.D. Cal. Apr. 15, 2010). Again, *Feil* is distinguishable because the defendants in that case faced conspiracy charges, which Zweig does not.[2] In addition, the indictment in that case failed to provide underlying factual allegations giving rise to the conspiracy charges or its means and methods. Here, Zweig faces no conspiracy charges, only individual charges that do not necessarily implicate co-conspirators or co-schemers. The Indictment describes the factual allegations giving rise to each of the counts with which Zweig is charged, and both parties agree that the government has provided voluminous discovery. Moreover, the government has disclosed its witness and exhibit lists, *see* United States' Witness List [Dkt. No. 67]; United States' Exhibit List [Dkt. No. 68]. Zweig does not allege that he lacks any factual information concerning the elements of the charges he faces. Because Zweig has the information he needs with respect to the charges against him to prepare a sufficient defense, I DENY his motion for a bill of particulars relating to co-conspirators.

**B. Paragraph 18(b) of the Indictment**

Zweig also moves for a bill of particulars detailing why the government intends to strike

---

[2] For this same reason, the six-factor test adopted by certain district courts in the Second Circuit, pertaining to co-conspirators, is not relevant here where Zweig does not face conspiracy charges. *See* Mot. at 5–6.

10

paragraph 18(b) of the Indictment as well as what the government's alternative theory as to how the lease was created, if any exists. The government opposes this request on the grounds that a bill of particulars is not an interrogatory device through which the defendant may inquire into the government's internal deliberative process, and says that it need not strike paragraph 18(b) because it is mere surplusage. Zweig disagrees, and filed a motion today to amplify his concerns. Dkt. No. 80-1. Because the government has not had a chance to respond to Zweig's additional argument filed in today's motion, I will defer ruling until the government responds.

## V. United States' Motions *in Limine*

The government moves *in limine* to preclude the introduction of four types of arguments and evidence at trial: (1) Zweig's prior hearsay statements, (2) any argument that Zweig should be acquitted because he believes that other individuals were involved and/or more culpable, (3) extrinsic evidence regarding collateral matters, and (4) impeachment on the basis of inadmissible criminal convictions.

With respect to the first and third categories, the government moves for preclusion of any and all of Zweig's prior hearsay statements as well as certain impeachment evidence. The general principles the government advocates are not controversial, but because it has not provided any specific examples of statements it seeks to preclude, it is premature to make a blanket ruling at this time. The government may raise these arguments again at trial on a statement by statement basis.

With respect to the second category, the government moves for preclusion because each individual's guilt or innocence must be determined by a jury separately, and that should Zweig focus on the potential guilt of others, he would impermissibly seek jury nullification. This is also premature. Because I will not limit Zweig's right to present a full and fair defense, which may include a discussion of other individuals' involvement, I DENY the government's motion without prejudice to its ability to object at trial to any specific statements.

With respect to the fourth category of impeachment on the basis of criminal convictions, the government moves to preclude Zweig from introducing evidence of witness Elias Batalias's arrest for misdemeanor petit larceny and 1993 conviction for disorderly conduct. I agree that Mr. Batalias's conviction for disorderly conduct is inadmissible under Rule 609 because it does not

11

involve a dishonest act or false statement and because more than ten years have passed since that conviction. Nor may Zweig may impeach Mr. Batalias with extrinsic evidence of his arrest for misdemeanor petit larceny. Such extrinsic evidence is not probative of Mr. Batalias' character for truthfulness or untruthfulness and is inadmissible under Rule 608(b).

The government also moves to preclude Zweig from introducing evidence of witness Matthew Katakis's 1998 conviction for importation of steroids. This conviction is likewise more than ten years old. It is irrelevant to the witness's character for truthfulness or untruthfulness and to the facts of this case.

For these reasons, I GRANT the government's motion *in limine* to exclude Mr. Batalias and Mr. Katakis's prior convictions under Rule 609, and GRANT the government's motion in limine to exclude Mr. Batalias's prior arrest under Rule 608(b).

## CONCLUSION

For the foregoing reasons, I DENY Zweig's motions for *Brady* material, disclosure of 404(b) evidence, dismissal of Counts One, Two, Four, and Twelve, and bill of particulars, except that I do not rule yet on the issues related to paragraph 18(b) in the Indictment. I GRANT the government's motion *in limine* concerning the convictions of Mr. Batalias and Mr. Katakis, and DENY the other motions *in limine* without prejudice to the government's ability to object at trial with respect to specific statements or evidence.

**IT IS SO ORDERED.**

Dated: September 5, 2017

William H. Orrick
United States District Judge

12